IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHILIP B. SAUER,

                **Plaintiff,**

   v.

PUBLISHER SERVICES, INC.,

                **Defendant.**

1:14-cv-698-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff Philip B. Sauer's ("Plaintiff")

Motions *in Limine* [56] ("Plaintiff's Motion") and Defendant Publisher Services,

Inc.'s ("Defendant") (together with Plaintiff, the "Parties") Motion *in Limine* to

Exclude Evidence of Purported Aiding and Abetting of a Fraudulent Transfer [56]

and Motion *in Limine* Regarding Fraud [57] (together, "Defendant's Motion").

## I.     BACKGROUND[1]

On February 14, 2014, Plaintiff filed, in the Superior Court of Gwinnett

County, Georgia, a three-count (3) Complaint against Defendant for fraud,

---

[1]     The factual background of this case is described in detail in the Court's
Order on Defendant's Motion for Summary Judgment, (March 9, 2016, Order
[48]).  The Court here discusses only the background relevant to the pending
motions.

conspiracy to defraud, and fraudulent conveyance of property under Georgia's Uniform Fraudulent Transfer Act ("UFTA"), O.C.G.A. § 18-2-70, et seq.  On March 10, 2014, Defendant removed the action to the Court on the basis of diversity jurisdiction.

On March 9, 2016, the Court entered an Order [48] granting in part and denying in part Defendant's Motion for Summary Judgment [36].  The Court denied Defendant's Motion for Summary Judgment on Plaintiff's UFTA claim, finding a disputed issue of fact whether a consignment relationship existed between Valley Games, Inc. ("Valley Games") and Defendant regarding the D-Day Dice inventory.  The Court determined that, if at trial a jury determines there was a consignment to Defendant by Valley Games, through Radiant Darkstar Enterprises, LLC ("Radiant Darkstar"), Defendant may then move the Court to consider if the consignment constituted a transfer prohibited under the UFTA.  The Court denied Defendant's Motion for Summary Judgment on Plaintiff's conspiracy to defraud claim, finding the record evidence sufficient to raise the issue whether Defendant and Valley Games acted in concert to fraudulently transfer D-Day Dice to Radiant Darkstar.  The Court granted summary judgment to Defendant on Plaintiff's fraud claim, finding Plaintiff did not offer any evidence that purportedly

2

false representations made by Paul Chapman, Director of Hobby Sales and Marketing for Defendant, were directed at or received by Plaintiff, that Plaintiff was misled by the false representations, or that he suffered damages as a result of being misled.

On July 6, 2016, Defendant filed its Motions.  Defendant seeks to exclude certain deposition testimony by Dean Burnham, Defendant's CEO, which Mr. Burnham provided in 2013 in connection with an action in Pennsylvania state court (the "Pennsylvania Action").  During the deposition, Mr. Burnham was questioned regarding an email exchange between Frederick Yelk Woodruff, an employee of Defendant, and Torben Sherwood, a principal of Valley Games and Radiant Darkstar.  The relevant testimony is as follows:

```
 1  Q.  And when you saw the e-mail, what was your
 2  thoughts?
 3  A.  It is—it's apparently more shifty, I
 4  guess is a word I would use, that—I mean, when I
 5  read this, that Torben obviously had some awareness
 6  of potential of seizure of inventory for some reason.
 7  Q.  And so did your company; correct?
 8  A.  Fred—yes, apparently Fred responded to
 9  this.
10  Q.  Fred's a senior buyer of your company;
11  correct?
12  A.  Yes, correct.
13  Q.  I mean—
14  A.  And I'm not—you know, again I—yeah.
```

3

15 I mean, I—
16 Q. So—
17 A. I agree with what you're—what you're—
18 Q. Fred—
19 A. —suggesting.
20 Q. Fred on behalf of your company is aiding
21 and abetting what Sherwood's trying to do; correct?
22 Correct?
23 A. I have to say yes given this—
24 Q. Okay.
25 A. —e-mail.

1 Q. Okay.
2 A. The context of this email, I think, yeah,
3 there's—
4 Q. No doubt about it?
5 A. —something that is—is being
6 avoided—
7 Q. Right.
8 A. —here, sure.

([56.2] at 16-17 ("Burnham Testimony")).

Defendant contends Mr. Burnham was not a party to the email exchange,

had never reviewed the email exchange, and was speculating about its meaning.

([56.1] at 5).  It notes that, after having an opportunity to review all relevant email

exchanges and the facts and circumstances surrounding this matter, Mr. Burnham

corrected his testimony.  (Id.).  Defendant argues that the Burnham Testimony has

no probative value and is unduly prejudicial.  It further seeks to exclude "any and

all evidence the Plaintiff might seek to elicit or introduce suggesting that

[Defendant] . . . 'aided and abetted' the transfers in issue."  (Id. at 5-6).

Defendant also seeks to exclude any reference to "any alleged 'fraud' perpetrated by [Defendant,]" arguing that "fraud has nothing to do with the remaining legal issues in this case," which it contends are whether Defendant's actions fall under the definition of a fraudulent transfer or were in furtherance of a conspiracy to fraudulently transfer assets.  ([57] at 1-2).

On July 6, 2016, Plaintiff field his Motion.  He seeks to exclude (i) the expert testimony of Oliver Holmes, CPA and Chad Sexton, CPA; (ii) lay opinion testimony regarding consignment inventory; (iii) argument that Plaintiff should have obtained a judgment or garnishment against Radiant Darkstar; (iv) evidence that Plaintiff was paid money by Defendant pursuant to a garnishment proceeding; (v) evidence of a settlement agreement; and (vi) evidence that Plaintiff is entitled to less than the value of D-Day Dice inventory at the time of transfer.

## II.   DISCUSSION

### A.   Defendant's Motion

#### 1.   Burnham Testimony

Defendant seeks to exclude certain deposition testimony of Dean Burnham, Defendant's CEO, about an email of which he was not the author or a recipient.

The testimony was given by Mr. Burnham in 2013 in connection with the Pennsylvania Action.  Defendant argues the Burnham Testimony should be excluded because (i) it is more prejudicial than probative; (ii) it is not relevant because Georgia law does not provide a cause of action for aiding and abetting a fraudulent transfer; (iii) the Burnham Testimony is an improper and inadmissible legal opinion by a lay person; and (iv) Federal Rule of Civil Procedure 32(a)(8) does not allow admission of the testimony.  Plaintiff argues the Burnham Testimony is admissible under Federal Rule of Evidence 801(d)(2) as an admission of a party opponent.  He argues the testimony is relevant because Georgia law provides a cause of action for conspiracy to aid and abet a fraudulent transfer.

After considering the arguments of the parties and the relevant case law, the Court determines it needs more context and information to decide whether the Burnham Testimony about the email is admissible.  The Court defers ruling on this issue until an objection to it is made when it is sought to be offered into evidence at trial.

2.    Fraud

Defendant next seeks to exclude any reference to "any alleged 'fraud' perpetrated by [Defendant,]" arguing that "fraud has nothing to do with the

6

remaining legal issues in this case," which it contends are whether Defendant's actions fall under the definition of a fraudulent transfer or were in furtherance of a conspiracy to fraudulently transfer assets.  ([57] at 1-2).  The Court granted summary judgment on Plaintiff's fraud claim, finding Plaintiff did not offer any evidence that purportedly false representations made by Paul Chapman, Director of Hobby Sales and Marketing for Defendant, were directed at or received by Plaintiff, that Plaintiff was misled by the false representations, or that he suffered damages as a result of being misled.

Defendant, however, does not identify any specific evidence or argument relating to "fraud" it expects Plaintiff may use at trial.  As Plaintiff notes, Plaintiff's remaining claims—liability under the Uniform Fraudulent Transfer Act and for conspiracy to defraud—include the term "fraud."  ([66] at 1).  Defendant's argument is too unspecific and could be used to exclude testimony or argument pertaining to Plaintiff's remaining claims.  Defendant's Motion to exclude any reference to "fraud" is denied.  Defendant may object at trial to any use of the word fraud if the Defendant believes use of the word was improper.

B.    Plaintiff's Motion

Plaintiff seeks to exclude (i) the expert testimony of Oliver Holmes, CPA

7

and Chad Sexton, CPA; (ii) lay opinion testimony regarding consignment inventory; (iii) argument that Plaintiff should have obtained a judgment or garnishment against Radiant Darkstar; (iv) evidence that Plaintiff was paid money by Defendant pursuant to a garnishment proceeding; (v) evidence of a settlement agreement; and (vi) evidence that Plaintiff is entitled to less than the value of D-Day Dice inventory at the time of transfer.[2]

### 1.   Expert Testimony of Holmes and Sexton

Plaintiff seeks to exclude the purported expert testimony of Oliver Holmes, CPA and Chad Sexton, CPA, arguing Defendant failed to provide expert witness reports for these individuals as required by Federal Rule of Civil Procedure 26(a)(2).  Federal Rule of Civil Procedure 26(a)(2)(B) requires expert witnesses to provide a written report, prepared and signed by the witness, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

---

[2]   Defendant, perhaps attempting to skirt the page limitations set forth in Local Rule 7.1(D), NDGa, filed six separate responses to each ground in Plaintiff's Motion.  ([60], [61], [62], [63], [64], [65]).  Each response contains an identical two-page boilerplate introduction.  The Court notes this briefing method is duplicative, confusing, and cumbersome.

Holmes and Sexton are members of the accounting firm Carr, Riggs & Ingram, which provides accounting services to Defendant.  Defendant represents Holmes and Sexton are fact witnesses who will testify how Defendant undertakes its marketing efforts, including the purchase by Defendant of games from manufacturers and vendors for resale, or alternatively, the undertaking by Defendant to market and distribute inventory owned by vendor customers and warehoused at Defendant.  Holmes and Sexton also may testify how Defendant accounted for Valley Games' inventory warehoused at Defendant, and why Defendant accounted for the inventory in that manner.  ([60] at 3).

Based on the representations made to the Court, it does not appear that Holmes and Sexton are witnesses "retained or specially employed to provide expert testimony in the case or one[s] whose duties as the party's employee[s] regularly involve giving expert testimony."  Fed. R. Civ. P. 26(a)(2)(B).  It appears, rather, that Holmes and Sexton will testify as to their personal observations of Defendant's accounting practices, including as to their accounting of the D-Day Dice inventory at issue in this action, based on their personal knowledge gleaned from their ordinary duties at Carr, Riggs & Ingram.  This type of testimony is not impermissible expert testimony.  "A company can call its

regular accountant or actuary as a fact witness to explain financial records that the witness prepared or otherwise has personal knowledge of from his or her ordinary employ." Georgia Operators Self-Insurers Fund v. PMA Mgm't Corp., 143 F. Supp. 3d 1317, 1337 (N.D. Ga. 2015) (citing cases); see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1223 (11th Cir. 2003) (employees or officers of a company may testify as lay witnesses based on their particularized knowledge gained from their own personal experiences, because "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business"). Holmes and Sexton thus are not expert witnesses who were required to submit expert reports. Plaintiff's Motion to exclude Holmes's and Sexton's testimony is denied.[3]

---

[3]     Plaintiff is, of course, entitled to raise appropriate objections if Holmes's or Sexton's testimony strays into expert matters, including the offering of opinions, that are beyond the scope of their personal knowledge based on their ordinary employment.

2. <u>Lay Opinion Testimony Regarding Consignment Inventory</u>

Plaintiff next seeks to exclude lay opinion testimony regarding consignment inventory.  Plaintiff argues consignment inventory is a certain type of inventory defined by Georgia law, and that lay witnesses are prohibited from testifying as to questions of law or the meaning of terms in a statute.  Defendant argues:

> Lay witnesses can and should be allowed to testify as to their belief and opinion, whether based upon the course of dealings between relevant parties they have observed or internal practices of [Defendant] about which they are familiar, that the course of dealings in issue satisfy the requirements of any contract, applicable case law or statute . . . .

([61] at 5).

O.C.G.A. § 11-9-102(21) defines a consignment as follows:

"Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

> (A) The merchant:
>
> > (i) Deals in goods of that kind under a name other than the name of the person making delivery;
> >
> > (ii) Is not an auctioneer; and
> >
> > (iii) Is not generally known by its creditors to be substantially engaged in selling the goods of others;
>
> (B) With respect to each delivery, the aggregate value of the goods is $1,000.00 or more at the time of delivery;

11

(C) The goods are not consumer goods immediately before delivery; and

(D) The transaction does not create a security interest that secures an obligation.

O.C.G.A. § 11-9-102(21).  While witnesses may not state a legal conclusion that a certain transaction constitutes a consignment under Georgia law, lay witnesses certainly may testify as to:  whether goods were delivered, the aggregate value of the goods, the type and purpose of the goods, and other factual information under Section 11-9-102(21).  Plaintiff's Motion to exclude lay opinion testimony regarding consignment inventory is denied, provided, however, that witnesses are precluded from offering a lay opinion whether a specific arrangement is or is not a consignment.  This is a determination to be made by the jury.

> 3.    Judgment or Garnishment

Plaintiff next moves to exclude argument by Defendant that Plaintiff should have obtained a judgment or garnishment against Radiant Darkstar.  Plaintiff argues that whether it obtained a judgment or garnishment against Radiant Darkstar is irrelevant to Plaintiff's claims against Defendant for liability under Georgia's UFTA and liability for conspiracy to defraud.  Defendant argues a judgment or garnishment is relevant to whether Plaintiff mitigated his damages,

and that evidence of mitigation is appropriate because UFTA claims sound in contract.  Plaintiff claims the duty to mitigate does not apply in cases of positive and continuous torts.

The Fourth Circuit recently noted that, while most courts "have refused to recognize violation of the Uniform Fraudulent Transfer Act as torts[,]" a "handful of courts"—including federal Courts interpreting Georgia's UFTA—"have recognized violations of the Uniform Fraudulent Transfer Act as torts." Sheehan v. Saoud, — F. App'x —, 2016 WL 2990988, at *8-9 (4th Cir. May 24, 2016) (citing Chepstow, 381 F.3d at 1090 (recognizing cause of action for civil conspiracy based on Georgia UFTA against non-transferee defendants); Alliant Tax Credit Fund 31-A, Ltd. v. Murphy, No. 1:11-cv-832-RWS, 2011 WL 3156339, at *8 (N.D. Ga. July 26, 2011) ("Although Plaintiffs' claim for civil conspiracy does not furnish an independent cause of action on which to hold Defendants liable, it can be used to establish some of Defendants' liability for fraudulent transfers under the UFTA.")).  In Chepstow, the Eleventh Circuit noted that, in Georgia, "to recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in *conduct that constitutes a tort*."  381 F.3d at 1090 (quoting Mustaqeem-Graydon v. SunTrust

13

<u>Bank</u>, 573 S.E.2d 455 (Ga. 2002)) (emphasis added).  That the Eleventh Circuit then recognized a cause of action for civil conspiracy based on a violation of Georgia's UFTA supports that the Eleventh Circuit implicitly recognizes Georgia's UFTA as a tort.

Under Georgia law, "[w]hen a person is injured by the negligence of another, he must mitigate his damages as far as is practicable by the use of ordinary care and diligence.  However, this duty to mitigate does not apply in cases of positive and continuous torts."  O.C.G.A. § 51-12-11.  Georgia courts have defined three types of "positive and continuous" torts:  (1) fraud; (2) ongoing violations of property rights; and (3) intentional torts such as assault and battery.  <u>Wachovia Bank of Ga., N.A. v. Namik</u>, 620 S.E.2d 470, 473 (Ga. Ct. App. 2005).  The parties do not provide, and the Court has not found, any authority discussing whether a violation of Georgia's UFTA qualifies as a "positive and continuous" tort.  The Court also is unable to find any precedent in Georgia or in other jurisdictions supporting that a creditor under the UFTA is required to mitigate damages resulting from a fraudulent transfer.  The Court further is unable to find any support for the proposition that "ordinary care and diligence" in the course of mitigating damages includes filing suit and engaging in potentially expensive

14

litigation.  The Court finds Defendant's argument that Plaintiff should have obtained a judgment or garnishment against Radiant Darkstar is irrelevant, and thus is excluded.  See Fed. R. Civ. P. 402.  To the extent Defendant could establish such evidence is relevant, the Court finds it would be more prejudicial than probative.  See Fed. R. Evid. 403.  Plaintiff's Motion to exclude argument he should have obtained a judgment or garnishment against Radiant Darkstar is granted.

### 4.   Payment to Plaintiff Pursuant to Garnishment

Plaintiff next seeks to exclude evidence that Plaintiff was paid money by Defendant pursuant to a garnishment proceeding.  Defendant contends this evidence is relevant to Plaintiff's civil conspiracy claim.  It intends to argue that Defendant paid proceeds from the sale of Valley Games' inventory into the registry of the State Court of Gwinnett County pursuant to the garnishment in issue, but that Defendant understood the D-Day Dice inventory was owned by Radiant Darkstar—not Valley Games—and thus did not pay D-Day Dice sale proceeds into the court registry.  Defendant argues this evidence shows Defendant acted in good faith and did not conspire with Valley Games to cause fraudulent transfers to be made.  The Court agrees that evidence that Defendant paid Plaintiff

15

pursuant to a garnishment proceeding may be relevant to whether Defendant intended to conspire with Valley Games to facilitate fraudulent transfers. Plaintiff's Motion is denied on this ground.

### 5.    Evidence of a Settlement Agreement

Plaintiff next seeks to exclude evidence of a settlement agreement between Plaintiff and Valley Games, Valley Games's principals, Radiant Darkstar, and Radiant Darkstar's principals.  On January 12, 2015, Plaintiff entered into a settlement agreement (the "Texas Settlement Agreement") with Valley Games, Radiant Darkstar, Torben Sherwood, Rik Falch, and Byron Kevin McKenzie ("Texas Action Defendants") in an action filed by Plaintiff in Texas.  According to Plaintiff, the claims in the Texas action were different from the claims asserted here, and the action related to intellectual property and inventory of twenty-three board games owned by Valley Games, one of which was D-Day Dice.  Defendant was not a party to the Texas Action.  Plaintiff argues that, if the Court determines that the Texas Action Defendants should be listed on the verdict form in this action pursuant to O.C.G.A. § 51-12-33, the Texas Settlement Agreement should be excluded from evidence pursuant to Federal Rule of Evidence 408.  Defendant argues that, even if Rule 408 applied here to bar the Texas Settlement Agreement,

Defendant offers the agreement for purposes other than proving or disproving the validity or amount of the claims at issue, or for impeachment or contradiction.

O.C.G.A. § 51-12-33 (the "Apportionment Statute") provides for apportionment of damages amongst joint tortfeasors.  The Apportionment Statute provides that, "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit."  O.C.G.A. § 51-12-33(c).  The statute also provides: "Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty . . . ."  O.C.G.A. § 51-12-33(d)(1).

Defendant concedes that the claims at issue in the Texas case and the resulting Texas Settlement Agreement are different from the claims in this case. ([64] at 6 ("the settlement agreement and related documents sought to be admitted by Defendant do not represent settlement of the 'same claim' at issue in this litigation.")).  Plaintiff represents that the Texas Action involved claims and property that are not at issue in this action.  Based on the representations of the parties, the Apportionment Statute does not appear to apply here because the alleged injury or damages at issue in this case are different from those addressed

17

by the Texas Settlement Agreement.[4]  The Texas Settlement Agreement thus is not

relevant, and is otherwise inadmissible under Rule 403 of the Federal Rules of

Evidence because it would mislead the jury and prejudice Plaintiff.

Defendant presents alternative theories of admissibility.  It argues that

affidavits from the settlement agreement are admissible to show that D-Day Dice

was owned by Valley Games and transferred to Radiant Darkstar.  Plaintiff

contends the affidavits are hearsay.  Because Defendant has not had an opportunity

to argue whether the affidavits may be admissible under an exception to hearsay or

are non-hearsay, the Court defers ruling on Plaintiff's Motion with respect to this

theory of admissibility.

Defendant also argues the Texas Settlement Agreement is admissible to

show that Plaintiff already settled with the real parties in interest in the Texas

litigation.  This argument is unpersuasive, because whether the Texas Action

---

[4]     For this same reason, however, the Court finds Federal Rule of Evidence
408 does not bar the admission of the Texas Settlement Agreement, because Rule
408 "unambiguously requires that the claim as to which the settlement offer was
made and the claim at issue in the litigation in which the offer is proffered as
evidence must be the same claim."  Armstrong v. HRB Royalty, Inc., 392 F. Supp.
2d 1302, 1304-1305 (S.D. Ala. 2005); see also Ostrow v. GlobeCast Am. Inc., 825
F. Supp. 2d 1267, 1272-73 (S.D. Fla. 2011) (citing cases).

Parties were previously released does not have any bearing on whether Defendant is liable here.  See Posey v. Medical Center-West, Inc., 354 S.E.2d 417, 419-20 (Ga. 1987) ("A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others for the same harm, unless it is agreed that it will discharge them.").  Defendant's argument also contradicts its previous argument that the claims at issue in this action are different than those at issue in the Texas Action.

Finally, Defendant argues the Texas Settlement Agreement is relevant to Defendant's affirmative defenses of "apportionment, payment/satisfaction, and mitigation of damages."  ([64] at 9-10).  Again, this argument contradicts Defendant's previous assertion that the claims at issue in this action are different than those at issue in the Texas Action.  It also contradicts Plaintiff's representation that the Texas Action involved claims and property that are not at issue in this action.

Accordingly, Plaintiff's Motion is granted in part as to the Texas Settlement Agreement.  The Texas Settlement Agreement is excluded, except that Defendant may present argument that the affidavits in the agreement are admissible under an

exception to hearsay or are non-hearsay for the limited purpose of showing that

D-Day Dice was owned by Valley Games and transferred to Radiant Darkstar.

> 6.     Evidence that Plaintiff is Entitled to Less than the Value of
>         D-Day Dice Inventory at the Time of Transfer

Finally, Plaintiff moves to exclude evidence that Plaintiff is entitled to less

than the value of D-Day Dice inventory at the time the transfer occurred.  The

UFTA provides:  "the creditor may recover judgment for the value of the asset

transferred, as adjusted under subsection (c) of this Code section, or the amount

necessary to satisfy the creditor's claim, whichever is less."  O.C.G.A. § 18-2-

78(b)(1).  Subsection (c) states:  "If the judgment under subsection (b) . . . is based

upon the value of the asset transferred, the judgment must be for an amount equal

to the value of the asset at the time of the transfer, subject to adjustment as the

equities may require."  O.C.G.A. § 18-2-78(c).  Plaintiff contends that, under the

UFTA, the value of Plaintiff's claim is the value of the assets transferred—

$139,984.80.  Subsection (c), however, provides that the value of the assets

transferred is "subject to adjustment as the equities may require."  Id.  Those

equities may be considered by the jury at trial.[5]  The Court denies Plaintiff's

Motion on this ground.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Publisher Services, Inc.'s

Motion *in Limine* to Exclude Evidence of Purported Aiding and Abetting of a

Fraudulent Transfer is **DEFERRED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine*

Regarding Fraud [57] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Philip B. Sauer's Motions *in*

*Limine* [56] are **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's

Motion is **GRANTED**, and Defendant is precluded from (i) offering argument that

Plaintiff should have obtained a judgment or garnishment against Radiant

Darkstar; and (ii) offering the Texas Settlement Agreement, except that Defendant

may present argument to the Court that the affidavits in the agreement are

admissible under an exception to hearsay or are non-hearsay, for the limited

---

[5]     It is unclear whether the damages provision in O.C.G.A. § 18-2-78 applies to
Plaintiff's civil conspiracy claim.

purpose of showing that D-Day Dice was owned by Valley Games and transferred to Radiant Darkstar.  Plaintiff's Motion is **DENIED**, in accordance with this Opinion and Order, on the other grounds asserted in his Motion.

**SO ORDERED** this 19th day of August, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE